IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 26 2021

CLERK, U.S. DISTRICT COURT
By_____
      Deputy

| | |
|---|---|
| HUMBERTO GARZA, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) |
| | ) |
| RICK MARQUES, | ) |
| Warden, FCI Big Spring, | ) |
| | ) |
| Respondent. | ) |

Civil No. ___:21-cv-_____
Crim No. 7:18-cr-01889-1

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

COMES Movant, HUMBERTO GARZA ("Garza"), appearing *pro se,* and in

support of this memorandum would show as follows:

## I. STATEMENT OF JURISDICTION

Title 28 United States Code, Section 2241 confers jurisdiction on district courts

to issue writs of habeas corpus in response to a petition from a state or federal

prisoner who "is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. 2241(a) & (c)(3). Under 28 U.S.C. § 2241, a petition must

be filed in the district of confinement. See *Lee v. Wetzel*, 244 F.3d 370 (5th Cir. 2001).

A federal prisoner may challenge the manner or execution of his sentence under 28

U.S.C. § 2241, and he  may also challenge the legality of his detention under § 2241

1

if he falls within the "savings clause" of § 2255(e). See *Gallegos–Hernandez v. United States*, 688 F.3d 190 (5ᵗʰ Cir. 2012).

## II. STATEMENT OF THE GROUND FOR REVIEW

Whether, in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Garza's prosecution under 18 U.S.C. § 922(g) is null and void because the Government was not able to prove both that Garza knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.

## III. PROCEDURAL HISTORY

### A. Procedural Background

On January 15, 2019, a grand jury sitting in the United States District Court for the Southern District of Texas, McAllen Division, returned a three (3) Count Superseding Indictment charging Garza. See Doc. 22.[1] Count 1s charged Garza with Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). *Id*. Count 2s charged Garza with Possession with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *Id*. Count 3s charged Garza with

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Southern District of Texas, McAllen Division, in Criminal No. 7:18-cr-01889-1, which is followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

Felon in Possession of Firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* The Superseding Indictment also contained a Notice of Forfeiture pursuant to 21 U.S.C. § 853(a). *Id.*

On August 2, 2019, a Re-arraignment Hearing was held and Garza entered a plea of guilty on Counts 2s and 3s of the Superseding Indictment, pursuant to a written Plea Agreement. See Doc. 33.

On November 14, 2019, Garza was sentenced to a total term of 120 months' imprisonment, 5 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $200. See Doc. 43.

On June 16, 2020, Garza filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was dismissed on June 11, 2021. See Docs. 51, 80, 81.

**B.**     **Statement of the Relevant Facts**

1.     Offense Conduct

On November 1, 2018, Customs and Border Protection (CBP) agents observed several individuals crossing the Rio Grande River with bundles of suspected narcotics in an area commonly used for drug trafficking activities. Around the same time, the agents also observed a truck leaving the area, which they followed to a residence in Rio Grande City, Texas. Garza was driving the truck, and when he got out and

approached the agents, he was visibly nervous and sweating profusely. Garza consented to a search of his truck, and the agents found four small wooden boxes underneath the toolbox in the bed of the truck. Garza denied knowing the content of the four wooden boxes, but also stated "they forced me to." He then consented to a canine search of the vehicle. The canine immediately alerted to the four wooden boxes. Upon further inspection, the boxes were opened and the agents discovered $6,260 in U.S. currency and 25 bundles of cocaine, which had a gross weight of 27.5 kilograms. Garza waived his *Miranda* rights and provided a statement. He stated that he was recruited to transport what he believed to be was marijuana in exchange for financial compensation. He also stated that his involvement was "forced" by pressure from Cartel members. Garza also consented to a search of his residence, which revealed five firearms that were found in his bedroom.

2.    Plea Proceeding

On August 2, 2019, a Re-arraignment Hearing was held before Judge Randy Crane. Garza entered a plea of guilty on Counts 2s and 3s of the Superseding Indictment, pursuant to a written Plea Agreement. See Doc. 33. In exchange for Garza's guilty plea, the government agreed to recommend a 2-level reduction for acceptance of responsibility and that the original Indictment and the remaining count of the Superseding Indictment be dismissed at the time of sentencing. See PSR ¶ 7.

4

The Court ordered preparation of a PSR and scheduled sentencing for October 17, 2019. *Id.*

### 3. Presentence Report Calculations and Recommendations

On September 9, 2019, the Probation Office prepared Garza's PSR, using the 2018 Guidelines Manual, incorporating all guideline amendments [USSG § 1B1.11]. See PSR ¶ 29. Count 2s calls for a Base Offense Level of 32 because Garza was held responsible for 26.1 kilograms of cocaine, pursuant to USSG § 2D1.1(c)(4). See PSR ¶ 31. The PSR calculated Garza's Total Offense Level to be level 32. See PSR ¶ 45. Garza's total criminal history points of 3, placed him in Criminal History Category II. See PSR ¶ 49. Based upon a Total Offense Level of 32 and a Criminal History Category of II, the guideline range for imprisonment was 135 to 168 months. However, since the statue of conviction for Count 3 has a 10-year maximum term of imprisonment, the guideline range for imprisonment is 120 months. See PSR ¶ 65.

### 4. Sentencing Proceeding

Prior to sentencing, Garza's counsel filed the following PSR Objections: (1) downward departure based on his "minimal or minor role" in the offense; (2) credit for acceptance of responsibility; (3) that the Court consider Garza's cooperation; and (4) that the firearms found in his possession "were hunting and sporting rifles". See Doc. 39.

5

On November 14, 2019, a Sentencing Hearing was held before Judge Randy Crane. At the sentencing, both Garza and his attorney confirmed that they reviewed the PSR together. See Doc. 50 at 3. As requested by Garza's counsel [Doc. 39], the Government moved to allow Garza to receive the full benefit (three points total) reduction for acceptance of responsibility, which the Court granted. *Id.* This lowered his guidelines imprisonment range to 97 to 121 months; however, "because of the mandatory minimum laws in this country, his range [was] 120 to 121 months." *Id.* at 5. Garza was given an opportunity to address the Court, and instead of speaking he provided a personal letter for the Court to review. *Id.* at 4.

After considering the factors under 18 U.S.C, § 3553(a), the District Court sentenced Garza to 120 months' imprisonment, which was the lowest sentence that the Court could impose. *Id.* at 5.

On November 22, 2019, two days after Judgment was entered in Garza's criminal case, Garza's retained counsel filed a "Motion to Withdraw" as counsel. See Doc. 45. In his motion, Garza's counsel asserted that Garza was dissatisfied "with his sentence and in particular with the fact that a reduction for cooperation with the government was not applied in his ease and expressed whether counsel was filing an appeal." *Id.* at 1. Garza's counsel "explained to [Garza] numerous times that application of said reduction was entirely contingent on the government making

motion." *Id*. According to Garza's counsel, Garza "wants to appeal the fact that said reduction was not applied." *Id*.

Approximately five months later, on April 28, 2020, Garza filed a *pro se* "Motion for Leave of Court to File Out of Time Appeal." See Doc. 49. In his motion, Garza stated that he advised his counsel to file an appeal on his behalf on the day of sentencing. *Id*. at 2. Unbeknownst to him, his counsel did not file the appeal. *Id*. at 2-3. Garza stressed that he "put faith in his counsel that the Notice of Appeal had been filed on his behalf." *Id*. at 3.

### 5. Postconviction Proceeding

On June 16, 2020, while Garza's motion for out-of-time appeal was still pending, Garza timely filed a a § 2255 Motion, arguing that his counsel rendered ineffective assistance. See Doc. 51. On May 13, 2021, the Magistrate Judge Nadia S. Medrano issued a Report and Recommendation ("R&R"), recommending Garza's § 2255 Motion and certificate of appealability ("COA") be denied. See Doc. 79. On June 11, 2021, the Court issued an Order adopting the Magistrate Judge's R&R and dismissed Garza's § 2255 Motion without prejudice and denied his COA as unnecessary. See Doc. 80.

## IV. <u>COGNIZABLE CLAIMS UNDER 28 U.S.C. § 2241 WRITS</u>

A federal prisoner may attack the validity of his conviction in a § 2241 petition if he can meet the requirements of § 2255(e)'s savings clause. See *Kinder v. Purdy*, 222 F.3d 209, 212 (5th Cir. 2000). The prisoner bears the burden of showing that the remedy under § 2255 would be "inadequate or ineffective to test the legality of his detention." § 2255(e); *Reyes-Requena v. United States*, 243 F.3d 893, 901 (5th Cir. 2001). A petitioner's inability to meet the procedural requirements of § 2255 is insufficient to meet this burden. See *Pack*, 218 F.3d at 452-53. Rather, a prisoner who wishes to proceed under the savings clause must establish that his claim "is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense" and that the claim "was foreclosed by circuit law at the time when the claim should have been raised." *Reyes-Requena*, 243 F.3d at 904. A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. See *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013). This Court has jurisdiction to hear a habeas corpus petition under 28 U.S.C. § 2241 because it is the closest U. S. District Court to where Garza is incarcerated.

A petitioner may test the legality of his detention under § 2241 through the § 2255(e) savings clause where the target of the petition is a sentence enhancement, not

8

a conviction, by showing that he is "actually innocent." See *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016). Where a petitioner asserts factual innocence of his crime of conviction due to a change of law, he may show that his remedy under § 2255 is inadequate or ineffective by satisfying four conditions: (1) "the existence of a new interpretation of statutory law," (2) "issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions," (3) that is retroactive, and (4) applies to the petition's merits such that it is "more likely than not that no reasonable juror would have convicted" the petitioner. *Hill*, 836 F.3d at 595.

## V. <u>DISCUSSION</u>

As a preliminary matter, Garza respectfully requests that this Court be mindful that *pro se* litigants are entitled to liberal construction of their pleadings. See *Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Haines v Kerner*, 404 U.S. 519, 520 (1972).

> **<u>In Light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Garza's Prosecution Under 18 U.S.C. § 922(g) is Null and Void Because the Government Was Not Able to Prove Both That Garza Knew He Possessed A Firearm and That He Knew He Belonged to the Relevant Category of Persons Barred From Possessing A Firearm.</u>**

Garza's sentence was driven by his conviction under 18 U.S.C. § 922(g). This judgment resulted in a 97-month sentence. As such, because he is actually innocent of said conviction, his felon in possession of a firearm charge should be dismissed and his sentence should be vacated.

In *Rehaif*, the Supreme Court holds that, to convict a defendant of violating § 922(g) and § 924(a)(2), the government must show not only that the defendant knew he possessed a firearm, but "also that he knew he had the relevant status when he possessed it." Opinion ("Op.") at 1. The Court states: "We conclude that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." See Opinion ("Op.") at 11 (emphases added).

This holding was reached in a 7-2 decision in *Rehaif*, authored by Justice Breyer. Justice Alito filed a dissenting opinion joined by Justice Thomas.

Petitioner Ali Rehaif came to the United States "on a nonimmigrant student visa to attend university." Op. at 2. But "[a]fter he received poor grades," the university dismissed him and "told him that his 'immigration status' would be terminated unless he transferred to a different university or left the country." *Id.* Rehaif did neither, but subsequently "visited a firing range, where he shot two

10

firearms." *Id.* "The Government learned about his target practice" and prosecuted him for possessing firearms as an alien unlawfully in the United States, in violation of § 922(g) and § 924(a)(2). At Rehaif's trial, "the judge instructed the jury (over Rehaif's objection) that the 'United States is not required to prove' that Rehaif 'knew that he was illegally or unlawfully in the United States.'" Op. at 2. The jury convicted, and the Eleventh Circuit affirmed. The Supreme Court reversed, ruling for Petitioner Rehaif.

Section 922(g) makes it a federal offense for nine categories of people to possess firearms, "including felons [§ 922(g)(1)] and aliens who are 'illegally or unlawfully in the United States.'" Op. at 1 (quoting 18 U.S.C. § 922(g) (5)(A)). "A separate provision, § 924(a)(2), adds that anyone who 'knowingly violates' the first provision shall be fined or imprisoned for up to 10 years." Op. at 1 (emphasis in opinion).

That has now changed. The Supreme Court ruled that in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2) (they go together), the Government must prove both that the defendant knew he or she possessed a firearm and that the defendant knew he or she knew he belonged to the relevant category of persons barred from possessing a firearm.

11

Whether a criminal statute requires the government to prove that the defendant acted knowingly, the Court said, is a question of congressional intent. There is a longstanding presumption that Congress intends to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct." This is normally characterized as a "presumption in favor of scienter."

In 922(g) and 924(a)(2), Justice Breyer wrote for the 7-2 decision, the statutory text supports the presumption. It specifies that a defendant commits a crime if he or she "knowingly" violates § 922(g), which makes possession of a firearm unlawful when the following elements are satisfied: (1) a status element; (2) a possession element (to "possess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a "firearm or ammunition"). Aside from the jurisdictional element, the Court said, § 922(g)'s text "simply lists the elements that make a defendant's behavior criminal. The term 'knowingly' is normally read 'as applying to all the subsequently listed elements of the crime.' And the 'knowingly' requirement clearly applies to 922(g)'s possession element, which follows the status element in the statutory text. There is no basis for interpreting 'knowingly' as applying to the second 922(g) element but not the first.

12

Notably, this issue won't just apply to people who are currently charged. Typically, decisions like these also apply retroactively to people who are on direct appeal from their convictions. That means many people currently languishing in federal custody may have an opportunity to challenge their convictions—a deluge federal courts experienced most recently when the court held that a commonly used sentencing enhancement law was too vague to be enforceable. This case may not resonate solely at the federal level. Many states model their statutes on federal law, and may find themselves bound to follow the Supreme Court's interpretation where the language is identical.

The Court concluded that the term "knowingly" in § 924(a) provides the *mens rea* for a violation of § 922(g). "The term 'knowingly' in § 924(a)(2) modifies the verb 'violates' and its direct object, which in this case is § 922(g)." Op. at 4.  And "§ 922(g) makes possession of a firearm or ammunition unlawful when the following elements are satisfied: (1) a status element (in this case, 'being an alien … illegally or unlawfully in the United States'); (2) a possession element (to 'possess'); (3) a jurisdictional element ('in or affecting commerce'); and (4) a firearm element (a 'firearm or ammunition')." Op. at 4. So, the jurisdictional element aside, "the text of § 922(g) simply lists the elements that make a defendant's behavior criminal." Op at 4. And those material, non-jurisdictional, elements (of a § 922(g) offense) are:

prohibited status, possession, and the element that the thing possessed qualifies as a firearm or ammunition.

The Court concluded that, "by specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." Op. at 5. Thus, "[a] defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require." Op. at 9.

The Court said it expressed "no view, however, about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue here." Op. at 11-12.

But the Opinion provides two hypotheticals where a reasonable doubt could arise about the defendant's knowledge of his or her status as a prohibited person. For example, if § 922(g) and § 924(a)(2) were construed to require no knowledge of status — the Court explained — the statutes could "apply to an alien who was brought into the United States unlawfully as a small child and was therefore unaware of his unlawful status." Op. at 7-8. "Or these provisions might apply to a person who was convicted of a prior crime but sentenced only to probation, who does not know that the crime is 'punishable by imprisonment for a term exceeding one year.'" Op. at 8 (emphasis in opinion) (quoting § 922(g)(1)).

14

Justice Alito disagreed with how the majority construed § 922(g) and § 924(a)(2). Dissent, Alito, J., at 4-23. He states that the majority opinion requires the government to establish the defendant "actually knew" about his or her prohibited status, id. at 15, and hence, according to the dissent, defendants could "escape liability under [§ 922(g)] by deliberately failing to verify their status." Dissent, Alito, J., at 15-16. However, a conscious-avoidance instruction would appear to address the act of "deliberately failing to verify" one's status.

Justice Alito makes one point of interest to defense counsel because prosecutors may try to act on it. He asserts that the majority opinion "may work to a § 922(g) defendant's detriment" because "if the prosecution must prove such knowledge [of a prior felony conviction] to the satisfaction of a jury, then under our decision in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), it is questionable whether a defendant, by offering to stipulate that he has a prior conviction, can prevent the prosecution from offering evidence about the nature of that offense." Op. at 16. According to Justice Alito, "if a defendant's knowledge is now necessary, the logic of *Old Chief* is undermined." Op. at 17.

However, if the defendant also stipulates to having knowledge that the prior conviction was a felony (i.e., punishable by more than a year in prison), there doesn't seem to be a basis for an argument that Old Chief doesn't apply. Also, as the dissent

15

states: "A felony conviction is almost always followed by imprisonment, parole or its equivalent, or at least a fine. Juries will rarely doubt that a defendant convicted of a felony has forgotten that experience, and therefore requiring the prosecution to prove that the defendant knew that he had a prior felony conviction will do little for defendants." Op. at 16. So it wouldn't seem necessary to tell jurors about the nature of the prior conviction. However, this issue could arise at trial and should be anticipated.

Justice Alito appears to provide the principal take-away for this case. He states that the majority's opinion offers a number of litigation options for people "currently serving sentences for violating 18 U.S.C. § 922(g)." Dissent, Alito, J., at 23. "Those for whom direct review has not ended will likely be entitled to a new trial. Others may move to have their convictions vacated under 28 U.S.C. § 2255, and those within the statute of limitations will be entitled to relief if they can show that they are actually innocent of violating § 922(g), which will be the case if they did not know that they fell into one of the categories of persons to whom the offense applies. *Bousley v. United States*, 523 U.S. 614, 618–619, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)." See Dissent, Alito, J., at 23. And "[i]f a prisoner asserts that he lacked that knowledge and therefore was actually innocent, the district courts, in a great many cases, may be required to hold a hearing, order that the prisoner be brought to court from a distant

16

place of confinement, and make a credibility determination as to the prisoner's subjective mental state at the time of the crime, which may have occurred years in the past." *Id.*

In *United States v. Gary*, \_\_\_ F.3d \_\_\_, 2020 WL 1443528 (4ᵗʰ Cir. Mar. 25, 2020), the court held the failure to advise a defendant of the *Rehaif* element at his guilty plea is "a structural error that requires the *vacatur* of [his] guilty plea and conviction" on plain error review. *Id.* at *4. This is so even if the defendant previously served more than a year in prison.

As the Fourth Circuit explained, "the Supreme Court has recognized that a conviction based on a constitutionally invalid guilty plea cannot be saved 'even by overwhelming evidence that the defendant would have pleaded guilty regardless.'" *Id.* at *5 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 84 n.10 (2004)). And a guilty plea "does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 618 (1998)). Thus, the error of not informing a defendant who pleads guilty to § 922(g) that the statute requires that he "knew he belonged to the relevant category of persons barred from possessing a firearm," *Rehaif*, 139 S. Ct. at 2200, falls into "'a special category of forfeited errors that can be corrected regardless

17

of their effect on the outcome,' [as] 'not in every case' does a defendant have to 'make a specific showing of prejudice to satisfy the "affecting substantial rights" prong'" of plain error review. *Gary*, 2020 WL 1443528, at *6 (quoting *United States v. Olano*, 507 U.S. 725, 735 (1993)). "Such errors are referred to as 'structural' because they are 'fundamental flaws' that 'undermine[] the structural integrity of [a] criminal tribunal.'" *Id.* (quoting *Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986)).

"[S]uch errors necessarily affect substantial rights." *Id.* at *7. Indeed, "the district court failed to inform Gary that knowledge of his prohibited status was an element of the offense, denying him any opportunity to decide whether he could or desired to mount a defense to this element of his § 922(g)(1) charges— as it was his sole right to do. Thus, in accepting his uninformed plea, the court denied Gary's right to make a knowing and intelligent decision regarding his own defense." *Id.* at *8. "To allow a district court to accept a guilty plea from a defendant who has not been given notice of an element of the offense in violation of his Fifth Amendment due process rights 'would surely cast doubt upon the integrity of our judicial process.' We cannot envision a circumstance where, faced with such constitutional infirmity and deprivation of rights as presented in this case, we would not exercise our discretion to recognize the error and grant relief." *Id.* at *9 (citation omitted).

See *Parks v. United States*, 767 F. App'x 509 (4th Cir. 2019). Petitioner was convicted under 18 U.S.C. §§ 922(g) and 924, which prohibit "knowingly possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year." Petitioner was sentenced to twenty-four months following the revocation of his supervised release, and he was additionally charged under §§ 922(g) and 924 for the same firearm possession. Petitioner filed a motion to dismiss the indictment, arguing double jeopardy. The district court denied the motion, citing *Johnson v. United States*, 529 U.S. 694 (2000), and *United States v. Woodrup*, 86 F.3d 359 (4th Cir. 1996). Petitioner appealed his conviction to the Fourth Circuit, which held that *Woodrup* precluded Petitioner's double jeopardy argument. The Supreme Court previously ruled in *Rehaif v. United States*, 139 S. Ct. 2191 (June 21, 2019), that the state must prove defendants knew both (1) that they were in possession of a firearm and (2) that they held the relevant status at the time of possession. Petitioner asks the Court to reverse the Fourth Circuit because it erred by not applying Rehaif as the controlling precedent. The Court granted certiorari and issued an order to vacate the judgment and remand to the Court of Appeals for the Fourth Circuit for further consideration in light of *Rehaif v. United States*, 588 U. S. ___ (2019). VACATED and REMANDED.

19

See also *United States v. Blair Cook*, No. 18-1343 (7th Cir. 2020). ROVNER, Circuit Judge. A jury convicted Blair Cook of being an unlawful user of a controlled substance (marijuana) in possession of a firearm and ammunition. See 18 U.S.C. §§ 922(g)(3) (proscribing possession of firearm by unlawful user of controlled substance), 924(a)(2)(specifying penalties for one who "knowingly" violates section 922(g)). Cook appealed his conviction, contending that the statute underlying his conviction is facially vague, that it improperly limits his Second Amendment right to possess a firearm, and that the district court did not properly instruct the jury as to who constitutes an unlawful user of a controlled substance. We affirmed Cook's conviction. *United States v. Cook*, 914 F.3d 545 (7th Cir. 2019). The Supreme Court subsequently held in *Rehaif v. United States*, 139 S. Ct. 2191, 2194, 2200 (2019), that the knowledge element of section 924(a)(2) requires the government to show that the defendant knew not only that he possessed a firearm, but that he belonged to the relevant category of persons barred from possessing a firearm. Consistent with the prior case law of this court, the superseding indictment in this case did not allege, nor the jury instructions advise the jury that it must find, that Cook knew he was an unlawful user of a controlled substance. Cook's petition for a writ of certiorari was pending at the time that Court was considering *Rehaif*, and Cook had suggested that if the Court in *Rehaif* expanded the knowledge requirement of section 924(a)(2) to

20

include knowledge of one's status, the Court ought to remand his case for further proceedings. Petition for Writ of Certiorari at 25–26, *Cook v. United States*, No. 18-9707 (U.S. June 12, 2019). The Court subsequently granted Cook's petition, vacated our decision sustaining his conviction, and remanded for reconsideration in light of *Rehaif*, as Cook had asked it to do. *Cook v. United States*, 140 S. Ct. 41 (Oct. 7, 2019).Upon reconsideration, we now reincorporate our previous decision, with minor modifications, rejecting Cook's vagueness and Second Amendment challenges to section 922(g)(3) along with his objection to the jury instruction on who constitutes an unlawful user of a controlled substance. But in light of *Rehaif*, we conclude that Cook is entitled to a new trial.

*Rehaif* is substantially relevant in regard to Garza's arguments– making clear indication that the interpretation of statutes by district courts are contrary to the Congress' intent. Further, the statutes are too ambiguous to secure a conviction. The same applies to Garza's circumstance.

In light of *Rehaif*, Garza's prosecution under 18 U.S.C. § 922(g) is null and void because the government was not able to prove both that Garza knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.

21

Finally, Garza asserts that the judgment based on a null and void conviction, resulted in a 120-month sentence. If so, this could be deemed a miscarriage of justice.

## VI. CONCLUSION

For the above and foregoing reasons, Garza'sfelon in possession of a firearm charges should be dismissed because he is actually innocent of said convictions and his sentence should be vacated. In the alternative, an evidentiary hearing should be held so that Garza may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: August 10, 2021

HUMBERTO GARZA
REG. NO. 80485-079
FCI BIG SPRING
FEDERAL CORR. INSTITUTION
1900 SIMLER AVE
BIG SPRING, TX  79720
Appearing *Pro Se*